UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN — SOUTHERN DIVISION

JULIE ALBERTS,
*Individually and on behalf of others similarly situated,*
    Plaintiff,

-vs-

CITIZENS DISABILITY, LLC,
    Defendant

Case No.
Hon.
CLASS ACTION COMPLAINT

## COMPLAINT & JURY DEMAND

Plaintiff Julie Alberts brings this class action complaint against Defendant Citizens Disability, LLC ("Citizens Disability") to stop Defendant's illegal practice of sending unsolicited text message calls to the cellular telephones of consumers and to obtain redress for all persons injured by their conduct.

### Jurisdiction

1. This Court has federal question jurisdiction under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.,* and 28 U.S.C. §§ 1331, 1337.

### Parties

2. The Plaintiff to this lawsuit is Julie Alberts ("Ms. Alberts") who resides in Lowell, Michigan, 49331.

3. The Defendant to this lawsuit is Citizens Disability, LLC, a limited liability company organized in and existing under the laws of the State of Massachusetts with its principal place of business located at 1075 Main Street, 4th Floor, Waltham, MA 02451.

1

4. Citizens Disability operates the website http://www.citizensdisability.com.

## Venue

5. The transactions and occurrences which give rise to this action occurred in Kent County, Michigan.

6. Venue is proper in the Western District of Michigan as the conduct and events giving rise to Plaintiff's claims arose in substantial part in this District. Furthermore, a substantial amount of the property affected by this claim, the Plaintiff's cellular telephone, is in this District.

7. Defendant sent multiple unsolicited text messages to Plaintiff in Michigan on her cellular phone with a Michigan area code.

## Auto-Dialed Text Message Calls Violate the TCPA

8. In 1991, Congress enacted the TCPA, 47 U.S.C. § 227, to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that unrestricted telemarketing . . . can be an intrusive invasion of privacy . . . 47 U.S.C. § 227, Congressional Statement of Findings #5.   Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls, finding:

> Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy. Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

47 U.S.C. § 227, Congressional Statement of Findings ## 10 and 12.

9. Thus, the TCPA prohibits the placement of calls to cell phones using an automated

telephone dialing system without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).

10. A text message is a "call" within the meaning of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009). Cited by, *Nunes v. Twitter, Inc.*, 194 F Supp 3d 959, 961-62 (ND Cal 2016).

11. Text messages to cellular devices can be intrusive, costly and are in violation of the TCPA, as noted in the Federal Communications Commission Consumer Bulletin, *Avoiding Spam: Unwanted Email and Text Messages*: (Exhibit 2 – *Avoiding Spam: Unwanted Email and Text Messages.*)

12. According to the Federal Trade Commission's recent Biennial Report to Congress, the emergence of new communication technologies has caused the number of illegal telemarketing calls to explode in the last four years. For example, VOIP technology allows callers to make a higher volume of calls inexpensively from anywhere in the world. Telemarketers have embraced these advances, causing consumer complaints about illegal telemarketing to skyrocket.

13. The Federal Communications Commission maintains a consumer guide called *Stop Unwanted Calls and Texts* finding that "unwanted calls, including robocalls and texts, are consistently among the top problems consumers cite when filing complaints with the FCC each year." (Exhibit 3 – *Stop Unwanted Calls and Texts*).

14. The Federal Trade Commission also published the following regarding the nuisance of unlawful phone calls and text message calls:

3

> Unwanted phone calls or random text messages seem to come at all hours. They bug you at work, interrupt your dinner, or wake you up when you're sound asleep. I think we can all agree they're a real nuisance.

(Exhibit 4 – *Stopping unwanted phone calls and text messages*).

15. On December 2, 2016, USA Today published a story, finding that these days, "many companies find it cheaper, easier and more profitable to send advertisements by text."

(Exhibit 5 – *Stop unwanted calls and texts from hitting your cellphone*).

16. Bill Schuette, the Michigan Attorney General, published the following consumer alert regarding spam text message calls:

> More than one billion text messages are sent everyday in the United States and studies show that more and more of these messages are spam, or unwanted, unsolicited junk mail, delivered to the consumer's wireless phone text message inbox. Not only is text message spam annoying, but it can also slow down your phone by taking up your phone's memory and, unlike spam e-mail, lead to unwanted charges on your wireless service bill. Many carriers will charge you simply for receiving a text message, regardless of whether you requested it. Additionally, if you use a smart phone or personal digital assistant (PDA) that functions like a personal computer, spam could put you at risk for viruses or "smishing," a scam where consumers are directed via text message to a website that unknowingly collects their personal information or downloads software that allows the cell phone to be controlled by hackers.

(Exhibit 6 – *Cell Phone Spam Stop Receiving Unwanted Text Messages!*).

17. The FCC has explicitly included text message calls within the orbit of the statute, explaining that the TCPA's prohibition on an ATDS "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls…" *Satterfield*, at 569 quoting *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd, 14014, 14115 (July 3, 2013); reconfirmed *In the Matter of Rules and Regulations Implementing the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003,*

4

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 19 FCC Rcd. 15927, 15934 (FCC August 12, 2004).

18. Plaintiff Julie Alberts brings this complaint against Defendant to halt Defendant's practice of making unsolicited text message calls to her cellular telephone, and to obtain redress for all persons injured by its conduct.

19. By making the text message calls at issue in this complaint, Defendant caused Plaintiff and the members of the class actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited text message calls, and in some cases, the monies paid to their wireless carriers for the receipt of such text message calls.

20. In response to Defendant's unlawful conduct, Plaintiff files this lawsuit and seeks an injunction requiring Defendant to cease all unsolicited text message calling activities and an award of statutory damages to the members of the class of $500-$1500 per illegal text message call under the TCPA, together with costs and reasonable attorneys' fees.

**Text Message Calls to Plaintiff and Putative Class Members**

21. Defendant purchased a list of cell phone numbers or obtained access to a list of cell phone numbers through a third-party vendor.

22. Plaintiff's cell phone number was included in that list, as well as, upon information and belief, numerous other residents of Michigan.

23. Upon information and belief, Defendant purchased numerous other lists of cell phone numbers that included Michigan residents.

24. Beginning in or around August 2014, Defendant and/or their authorized agents, vendors, or contractors, used an automatic telephone dialing system to make multiple text message

5

calls to the cellular telephone owned by Plaintiff.

25. The body of the message Defendant sent to Plaintiff read:

> DISABILITY ALERT NOTICE! Please call 509-761-3804 for important information about your disability benefits application

26. Of the multiple messages sent from or on behalf of Citizens to Ms. Alberts on her cellular phone, including on the following dates: August 1, 2014; August 6, 2014; and August 7, 2014; seven or more of the messages were the same or substantially the same.

27. Defendant texted Plaintiff from the following phone numbers: (509) 769-3240, (530) 322-5525, (903) 213-4098, (917) 242-4544, (814) 474-6520, (541) 991-4231, (669) 226-6062, (360) 799-5403, (541) 361-5152, (347) 464-0257, (954) 440-7930, (786) 619-1267, and (347) 826-0962.

28. On information and belief, Defendant made, or had made on its behalf, the same (or substantially the same) text message call to thousands of similarly situated Michigan cell phone users ("putative class members").

29. Defendant made these text message calls to Plaintiff and putative class members using an automated telephone dialing system ("ATDS"), or contracted with another entity to make the calls using an automatic telephone dialing system.

30. Defendants made, or had made on their behalf, these text message calls to Plaintiff and putative class members, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

31. On information and belief, Defendant texted thousands of consumers.

32. On information and belief, Defendant was aware that the above described text message

calls were being made either by it directly, or made on its behalf.

33. These text message calls interrupted Plaintiff's day, both her personal time and her work time.

34. These text message calls consumed storage space on her cellular phone.

35. These text message calls caused Plaintiff to stop what she was doing, review the unwanted text message call, and then delete the unwanted text message call or suffer loss of storage on her cellular phone.

36. These text message calls often littered her text message folder, much to her annoyance and frustration, and caused her to expend extra time to sift through the myriad of unwanted text message calls only to locate the personal text message calls she wanted to address.

37. The putative class members suffered similar damage.

## CLASS DEFINITION AND CLASS ISSUES

38. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

39. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and a class (the "Class") defined as follows:

   a. **CLASS I**

   > All persons within the United States: (a) Defendant and/or a third party acting on their behalf, made two or more non-emergency telephone calls in a twelve-month period; (b) to their residential or cellular telephone number; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

40. **Numerosity:** The message at issue appears in form and substance to be a pre-formatted message targeted to a broad market of individuals who possess cell phones.  While the

7

precise number of Class members is unknown and not available to Plaintiff at this time, these known facts facially support the conclusion that individual joinder is impracticable. Class members can be identified through Defendants' records and those of cell phone carriers through whom the texts were delivered. On information and belief, Defendants have made text message calls to thousands of consumers who fall into the definition of the Class.

41. **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited text message calls.

42. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in class action litigation. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

43. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a. Whether Defendant's conduct constitutes a violation of the TCPA;

    b. Whether the equipment Defendant used to make the text message calls in question was an automatic dialing system as contemplated by the TCPA;

    c. Whether Defendant systematically made text message calls to persons who did not previously provide Defendant with their prior express consent to receive such text

        message calls;

    d.    Whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct.

44.    **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially in comparison to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions ensured.

**COUNT I:    Violation of the TCPA, 47 U.S.C. § 227 *et seq.*,**
**(On behalf of Plaintiff and the Class)**

45.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

46.    Defendant made unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Class *en masse* without their prior express consent.

47.    Defendant made the text message calls, or had them made on their behalf, using equipment

that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

48. Defendant utilized equipment that made, or had made on their behalf, the text message calls to Plaintiff and other members of the Class simultaneously and without human intervention.

49. By making, or having made on their behalf, the unsolicited text message calls to Plaintiff and the Class, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. §227(c)(5). As a result of Defendant's unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of money they paid to receive the unsolicited text message calls on their cellular phones and are entitled to statutory damages under section 227(b)(3)(B) and 227(c)(5) at a minimum of $500.00 in damages for each such violation of the TCPA.

50. Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

## PRAYER FOR RELIEF

51. WHEREFORE, Plaintiff Julie Alberts, individually and on behalf of the Class, prays for the following relief:

52. An order certifying the Class as defined above, appointing Plaintiff Julie Alberts as the representative of the Class, and appointing her counsel as Class Counsel;

53. An award of actual and statutory damages;

54. An injunction requiring Defendant to cease all unsolicited text message calls, and otherwise protecting the interests of the Class;

55. An award of reasonable attorneys' fees and costs; and

56. Such other and further relief that the Court deems reasonable and just.

Respectfully Submitted,

By: s/ Priya Bali
Priya Bali (P78337)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
24500 Northwestern Hwy, Ste 206
Southfield MI 48075
(248) 208-8864
Priya@MichiganConsumerlaw.com

B. Thomas Golden (P70822)
Golden Law Offices, P.C.
2186 West Main Street
P.O. Box 9
Lowell, MI 49331
(616) 897-2900
btg@bthomasagolden.com

Dated:   April 16, 2018                     Attorneys for Plaintiff